**C. RALLO CONTRACTING COMPANY,**
Inc., a corporation (Plaintiff),
Respondent,

v.

Thomas J. BLONG and Thomas J. Blong,
Jr., d/b/a Thomas J. Blong Painting
Company, Waggener Paint Company, a
corporation, Appellant,

Glidden Company, a Corporation, United
States of America and Gus F. Koehler,
District Director of Internal Revenue, St.
Louis, Missouri, Respondent.

No. 29732.

St. Louis Court of Appeals.
Missouri.

June 3, 1958.

Motion for Rehearing or to Transfer to
Supreme Court Denied July 1, 1958.

Louis M. Kohn, St. Louis, for appellant Waggener Paint Co.

Harry Richards, U. S. Atty., Robert E. Brauer, Asst. U. S. Atty., St. Louis, for respondent United States.

DOERNER, Commissioner.

This is an interpleader suit to determine the party entitled to a fund paid by plaintiff into the registry of the court below. The facts are relatively simple, and are undisputed.

Plaintiff, C. Rallo Contracting Company, Inc., was the general contractor engaged in the construction of the Bishop DuBourg High School in St. Louis and hired the defendants, Thomas J. Blong and Thomas J. Blong, Jr., doing business as Thomas J. Blong Painting Company, to supply the materials and do painting work on the school. By reason of such painting work,

plaintiff became indebted to the Blongs in the amount of $3,726.23.

The claim of appellant, Waggener Paint Company, to the fund arose in this manner: On September 15, 1954, it recovered a judgment for $5,100 in the Circuit Court of the City of St. Louis against the two Blongs, doing business as the Thomas J. Blong Painting Company. An execution was issued under this judgment on September 17th, and garnishment proceedings in aid of the execution were instituted against plaintiff. A notice of garnishment was executed by the sheriff of the City of St. Louis by delivering the same to one Ann Dattilo at the plaintiff's office on September 21, 1954. No officer of the corporation was in the office at the time the notice of garnishment was delivered by the sheriff.

The claim of the United States of America to the fund arose out of its lien for withholding taxes owed it by the Thomas J. Blong Painting Company. It is admitted that taxes and interest in the total amount of $3,335.34 were assessed against the Painting Company on August 12, 1954; that the Blongs were given notice of this assessment, and demand for payment was made on August 20, 1954; and that on September 24, 1954, notices of a tax lien were filed in the office of the Recorder of Deeds of St. Louis County, the county in which both Blongs resided, and in the office of the Recorder of Deeds of the City of St. Louis—the offices of the Thomas J. Blong Painting Company being located in said city. On September 28, 1954, a levy under a certain warrant for distraint issued by the District Director of Internal Revenue was served on plaintiff, C. Rallo Contracting Company, attaching in its hands all property, rights to property, monies, credits and bank deposits in the plaintiff's possession belonging to Thomas J. Blong and Thomas J. Blong, Jr., doing business as Thomas J. Blong Painting Company.

Being thus confronted with adverse claims to the money it owed the Blongs, the plaintiff, C. Rallo Contracting Company

filed this action on December 30, 1954, interpleading the Blongs, the District Director of Internal Revenue in St. Louis, the United States of America, the Waggener Paint Company, and the Glidden Company. Motions to dismiss on behalf of the District Director of Internal Revenue in St. Louis and the United States of America were sustained, and the latter then re-entered the case by requesting and being granted leave to intervene. The Glidden Company renounced any claim to the fund, and the Blongs defaulted. By consent, the trial court sustained the bill of interpleader and directed the plaintiff to pay the sum of $3,726.23 in its hands into the registry of the court. It allowed counsel for plaintiff the sum of $500 out of the fund as and for attorneys' fees, so that the balance for which the respective claimants contended was the sum of $3,226.23. Judgment below was for the United States.

The parties are in agreement that the United States obtained a lien on the debt owed by plaintiff to the Blongs when it filed its notices of the liens in the recorders' offices on September 24, 1954. But appellant argues that it was not only a judgment creditor of the Blongs, but that, by reason of the delivery on September 21, 1954, of the notice of garnishment to the plaintiff, it thereby obtained a lien on the indebtedness prior and superior to that of the United States, citing Section 6323, Title 26 U.S.C.A., 1954 Internal Revenue Code, and Miller v. Bank of America, 9 Cir., 166 F.2d 415. The United States agrees that a judgment creditor who acquired a prior valid lien on the indebtedness would have a right thereto superior to its own, but contends that the service of the notice of garnishment on the plaintiff was invalid and that the appellant therefore did not acquire a lien against the indebtedness.

The applicable statute, Section 525.050 RSMo 1949, V.A.M.S., provides, in part:

"Notice of garnishment shall be served on a corporation, in writing, by delivering such notice, or a copy thereof, to the president, secretary, treasurer, cashier or other chief or managing officer of such corporation;"

The return of the sheriff of the notice reads as follows:

"No goods, chattels, or real estate found in the City of St. Louis, Mo., belonging to the within named defendants Thos. J. Blong and Thos. J. Blong, Jr., d/b/a T. J. Blong Painting Co., whereon to levy the writ hereto attached and make the debt and costs, or any part thereof; thereupon, by order of the attorney for plaintiff, I executed said writ, in said City of St. Louis, at the hour of 9 o'clock and 20 minutes A.M., on the 21st day of September, 1954, by declaring in writing to C. Rallo Contracting Co., a corporation, by delivering said written declaration, directed to said corporation to Ann Dattilo, Chief Clerk of said corporation, she being in the business office of said corporation and having charge thereof, that I attached in its hands all debts due from it to said defendant as above, and all goods, moneys, effects, rights, credits, chattels, choses in action and evidences of debt, of, belonging to, the said defendant as above, or so much thereof as would be sufficient to satisfy the debt, interest and costs in this suit, and by summoning it in writing as garnishee, and I, at the same time, by said direction, further executed said writ by summoning said corporation as granishee, by declaring to it in writing, by delivering a summons of garnishment in writing directed to said corporation, to said Ann Dattilo, C. C. thereof, that I summoned it to appear before the Circuit Court for the City of St. Louis, at the Court House in said City, at the return term of said writ to wit: On the 1st Monday of Dec. 1954 next, to answer such interrogatories as might be exhibited and propounded to it by the within named plaintiff.

"The President or other chief officer of said corporation could not be found in the City of St. Louis at the time of service.

                    "Martin L. Tozer
"Fee $1.50 Pd.      Sheriff of the City of St. Louis
"N.B.$1.00
"Ret. 12-6-54       By Fred J. Mueller, Deputy."
"St. Louis, Mo.

While this return described Ann Dattilo as "Chief Clerk" of the plaintiff corporation, that term was never used by either of the witnesses who testified as to her title and her duties. Joseph Rallo, Assistant Secretary of the C. Rallo Contracting Company, Incorporated, testified that she was a bookkeeper whose duties consisted of taking care of the records, checking invoices, handling checks made payable to the firm, and making out checks in payment of invoices, but only when instructed to do so by one of the company's officers. He stated further that she was not an officer of the corporation, and described her as a trusted employee who took charge of the office when he was away from it. The company, he testified, had no one designated as cashier.

Ann Dattilo described her position as that of a bookkeeper-clerk. She testified that when none of the officers of the company were in the office she had charge of it to see that the work progressed and that everything went all right.

■ The notice of garnishment is the means by which the jurisdiction of the court is established over the property or debt garnished, and is an indispensable prerequisite to jurisdiction over the same. Gates v. Tusten, 89 Mo. 13, 14 S.W. 827; Howell v. Sherwood, 213 Mo. 565, 112 S.W. 50. Since the purpose of the summons, as distinguished from the notice, is to bring the garnishee personally into court, he may, by appearing generally and answering interrogatories, waive any defect as to the service of the summons as to him personally. Fletcher v. Wear, 81 Mo. 524; Marx v. Hart, 166 Mo. 503, 66 S.W. 260.

But jurisdiction of the court over the res can neither be waived nor conferred by consent. Gates v. Tusten, supra; State ex rel. Shaw State Bank v. Pfeffle, 220 Mo.App. 676, 293 S.W. 512. Hence the issue presented to us is whether the service of the notice as shown by the sheriff's return was sufficient to confer jurisdiction upon the court of the indebtedness owed by the plaintiff to the Blongs.

Appellant concedes that Ann Dattilo was neither the president, secretary, treasurer, nor cashier of the plaintiff corporation, but argues that Section 525.050, supra, should be liberally construed, and that by the phrase "or other * * * managing officer" the General Assembly meant to include an employee of a corporation whose duties, functions and responsibilities are such that delivery of the notice of garnishment to him would advise the corporation of the garnishment proceedings.

But the purpose of the notice of garnishment, as stated, is to establish the court's jurisdiction over the res. Hence, the authorities hold that a strict compliance with the statutory requirements is a prerequisite to support the court's jurisdiction over the property or debt garnished. Kurre v. American Indemnity Co. of Galveston, Texas, 223 Mo.App. 406, 17 S.W.2d 685; State ex rel. Shaw State Bank v. Pfeffle, 220 Mo.App. 676, 293 S.W. 512. Appellant cites the former case in support of its argument for a liberal construction of the statute, but this court there said: "* * * even though the garnishee, by appearing, cannot complain of the judgment in so far as it may affect him personally, nevertheless the pertinent statutes must be strictly complied with in order to give the court jurisdiction to proceed, since mere jurisdiction over the person will not carry with it jurisdiction over the res." (17 S.W.2d loc. cit. page 687.) And in the Shaw State Bank case, supra, it was held: "A strict compliance with the statutory requirements is a prerequisite to support the court's jurisdiction over the garnishment

proceedings." (293 S.W. loc. cit. page 516.)

Appellant also cites the case of McAllister v. Pennsylvania Insurance Co., 28 Mo. 214, where the sheriff's return recited that service of the notice of garnishment on two foreign insurance companies had been made by delivery of the notices to one Budd, their agent. The statute, as it then existed, R.C. 1855, § 26, p. 246, did not include the latter part of the present § 525.050, relating to the service of the notice on foreign insurance companies by delivering it to the superintendent of the insurance department. Pointing out that if a foreign insurance company qualified to do business in Missouri could not be served by delivery of the writ to its authorized agent, as its managing officer in Missouri, there would arise a discrimination between domestic and foreign insurance companies with respect to process, the Supreme Court there held that the return was prima facie sufficient; and that if the garnishees desired to contest the issues as to whether they were foreign insurance companies, whether they were qualified to do business in Missouri, or whether Budd was their authorized agent, they might raise such defenses in their answer.

Section 525.050, supra, is obviously more restrictive than either our former general process statute relating to corporations, § 887 RSMo 1939, since repealed, or our present statute, section 506.150(3) RSMo 1949, V.A.M.S. In both of those sections it was and is provided that, under certain circumstances, the summons may be served by leaving a copy at the corporation's business office "with the person having charge thereof," whereas there is no similar provision in the garnishment statute under consideration. Yet even under § 887 RSMo 1939, it was the rule that a recital in the sheriff's return that the person served was in charge of the business office would not be good if the return contained facts which contradicted the recital. Thus it was held in Coerver v. Crescent Lead & Zinc Corporation, 315 Mo. 276, 286 S.W. 3, that no valid service was obtained where the return stated that service had been made on a watchman who was then in charge of the defendant's business office.

It will be observed that the persons named in § 525.050, supra, upon whom the notice of garnishment may be served, with the possible exception of the word "cashier", are what commonly are regarded as the principal or executive officers of a corporation. Construing the phrase "or other chief or managing officer" in the light of the preceding corporate officers enumerated, it would appear that what was meant by such words was a duly constituted executive officer whose authority and powers are such that he is regularly in control of the operations and business of the corporation. Thus, in Stanley v. Sedalia Transit Co., 136 Mo.App. 388, 117 S.W. 685, 686, it was said: "A chief officer of a private corporation is one who has charge and control of its business, is its managing officer, and is not one who is charged with the performance of other and subordinate duties." 136 Mo.App. loc. cit. 393, 117 S.W. loc. cit. See Oklahoma Fire Ins. Co. v. Barber Asphalt Paving Co., 34 Okl. 149, 125 P. 734, and Central Ohio Emulsion Corporation v. William Whitman Co., 99 Ohio App. 102, 128 N.E.2d 237. We have read the cases from other states cited by appellant and find that they are not in point because the particular statute in those cases was differently worded and broader than our Section 525.050.

Ann Dattilo, upon whom the notice of garnishment was served in this case, may have in a limited capacity been temporarily in charge of the business office of the C. Rallo Contracting Company during the intervals when Mr. Rallo was away from its office, but it is clear from the evidence that she had no corporate powers or authority such as would constitute her as its executive officer regularly in charge of its operations and business. We therefore hold that by the service of the notice of garnishment on her

the court did not acquire jurisdiction over the indebtedness owed by the Rallo Company to the Blongs, and that the appellant did not acquire a lien on such indebtedness prior and superior to the lien of the United States.

The judgment of the circuit court should be affirmed, and the Commissioner so recommends.

PER CURIAM.

The foregoing opinion of DOERNER, C., is adopted as the opinion of the court.

The judgment of the Circuit Court of the City of St. Louis is accordingly affirmed.

RUDDY, P. J., ANDERSON, J., and JAMES D. CLEMENS, Special Judge, concur.